Leona B. SULLINS (now Leona B. Taylor),
Plaintiff in Error,

v.

Jesse C. SULLINS, Defendant in Error.

No. 36214.

Supreme Court of Oklahoma.

Feb. 1, 1955.

Rehearing Denied March 15, 1955.

Meacham, Meacham, Meacham & Meacham, Clinton, for plaintiff in error.

Jones & Wesner, Cordell, for defendant in error.

HALLEY, Justice.

This is an appeal from an order of the District Court of Washita County modifying a divorce decree as to child custody and child support which had been agreed upon by the parties prior to the divorce decree, and evidenced by a written contract between the parties which was approved by the Court in the divorce decree, but not made a part of the decree.

Jesse C. Sullins and Leona B. Sullins had four children, two of whom were minors when Mr. Sullins filed an action for divorce, setting up the existence of a contract between the parties whereby it was agreed that in the event of a divorce the wife should have the custody of the two minor children and all of the income from certain land jointly owned by the parties to enable her to support their minor children.

The divorce was granted Mr. Sullins July 12, 1951, giving the custody of the minor children to Mrs. Sullins " * * * with the right of visitation at any and all reasonable times by the plaintiff."

We shall refer to the parties by name or as they appeared in the divorce action where Mr. Sullins was plaintiff and Mrs. Sullins defendant.

Mr. Sullins later remarried. Mrs. Sullins took the two younger children to Phoenix, Arizona in 1952, where her oldest child lived and had a home. She claimed that she went to Arizona because she would make better wages there than in Oklahoma. She married a man by the name of Taylor in September, 1952. They established a home there and the minor son 10 years of age attended school. He also attended Sunday School.

June 19, 1953, Mr. Sullins filed a motion to modify the divorce decree in regard to "the property rights and custody of the minor children" in the following particulars:

He asked for the custody of Lynn Dale Sullins, their minor son, and one-half of the rents in their 230 acre farm to help him support their son and that the remaining one-half continue to go to Mrs. Sullins for the support of their minor daughter. He asked for the possession and management of the farm and as ground for the modification he alleged:

That Mrs. Sullins had violated the terms of the divorce decree by denying him the privilege of visiting their minor children; that she had remarried and removed the minor children to Arizona without the consent of the court; that he had remarried and established a home in Oklahoma and is capable and willing to care for their minor son; that the defendant had neglected the farm in failing to keep the improvements insured or repaired and had generally abandoned supervision of the farm.

The defendant filed a response denying most of the foregoing allegations but admitting her remarriage and removal of the children to Arizona. She alleged that such removal was known to the plaintiff and that he acquiesced therein.

Defendant further denied the right of plaintiff to have modified the separation agreement between them because it had become final as a contract between the parties.

The court heard the testimony of several witnesses and found that Mrs. Sullins had violated the order of the divorce decree in failing to allow Mr. Sullins to visit the children at reasonable times and had tried to keep the children away from their father and his influence entirely. Mrs. Sullins stated on the witness stand that she would be willing to allow the plaintiff the custody of their minor son during the three summer months. The court gave the custody of the minor son to the father.

It was further ordered that Mrs. Sullins be deprived of the possession and management of the farm in Oklahoma since she now lives in Arizona and the court ordered that the farm be placed in the custody of the cashier of the First National Bank and Trust Company of Elk City and such cashier was appointed receiver, to take possession of and management of the farm, collect the rents and deliver one-half of the net proceeds to Mr. Sullins and one-half to Mrs. Sullins to enable them to support the child awarded to each of them.

The court took the view that such modification of the separation agreement would be lawful and that such agreement and the divorce decree be modified as above set out. From this order, Mrs. Sullins has appealed and relies upon the following contentions:

1. The court erred in modifying separation agreement and property settlement.

2. In entirely abrogating provision therein made for the benefit of children of the parties.

3. In placing property of parties in receivership.

4. In unqualifiedly awarding the child of the parties of tender age to plaintiff and away from defendant under the evidence.

The separation agreement recites that the parties are the owners as tenants in common of 230 acres of farm land and that:

"* * * the real estate hereinabove described shall be occupied by the party of the second part and that she shall receive all of the issues, rents, profits and income therefrom for the use and benefit of the minor children until all of the minor children above named have attained majority.

"* * * neither of the parties hereto will sell, incumber or in any way alienate his or her interest in said real property, and that neither of said parties will, during such period, institute partition actions or proceedings in connection with said land, it being understood, however, that each of the parties hereto owns an undivided one-half in and to a portion of the mineral rights in and under said land, and it is understood and agreed in that connection that either of said parties may sell, lease, or otherwise dispose of his or her undivided portion of said minerals without the joinder of the other party in such conveyances, unless the purchaser should require same, in which instance the parties each agree to join with the other in making such conveyances for the purpose of satisfying the purchaser. * * *"

Certain unpaid bills were due and it was provided that Mrs. Sullins might sell certain personal property to pay such bills and that Mr. Sullins would will to their children a certain inheritance expected to come into his possession and that the separation agreement would be submitted to the court in the event of a divorce action and that if a divorce should be granted the custody of their two youngest children should be awarded to Mrs. Sullins with the right of visitation by Mr. Sullins at all reasonable times and under reasonable circumstances.

In the prayer of Mr. Sullins' divorce petition he prayed that the custody of the two

minors be awarded to Mrs. Sullins in accordance with their previous agreement. The divorce decree complied with the foregoing request. He claimed that he was too ill at that time to assume the custody of either child.

The statutes applicable to the principal issues here involved are as follows:

Section 6, 32 O.S.1951,

"A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree in writing to an immediate separation, and may make provision for the support of either of them and of their children during such separation. R.L.1910, § 3354."

Section 1277, 12 O.S.1951,

"When a divorce is granted, the court shall make provision for guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect, whenever circumstances render such change proper either before or after final judgment in the action. R.L.1910, § 4968."

Section 1279, 12 O.S.1951,

"A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of either party in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party. R.L. 1910, § 4970."

We think Mrs. Sullins places an erroneous interpretation upon the foregoing statutory provisions. In her brief it is stated that the modification decree " * * * struck down entirely all provisions for child support under the agreement and made no provision for child support." As a matter of fact, the identical child support set up in the separation agreement and in the divorce decree is continued in the modification decree. The latter provides that the rentals from the farm land originally placed in the possession of Mrs. Sullins to support the two children, shall now be divided in equal shares between the parties, each having the custody of one minor.

■ There is no question but that Mrs. Sullins is correct in her contention that a property settlement not incorporated in a divorce decree but merely approved by such decree may not be changed thereafter except by the consent of the parties, upon the theory that interests vested by agreement of the parties becomes thereafter governed by contract and not by decree.

The modification decree made no change in the provisions of the separation agreement as to the division of the personal property held by the parties; no change in their ownership of their jointly owned real estate; custody of the two children was divided and income from the land was likewise divided, but was left for the support of the minor children.

■ The court concluded that the best interests of the minors demanded the appointment of a receiver and with this we find no fault since Mrs. Sullins no longer lives in the State. The income from the land was, by the separate agreement and the divorce decree, devoted to the support of the minor children. Possession of the land was only vested in Mrs. Sullins temporarily and only so long as the youngest child remained a minor. Possession, rents and all other rights pertaining to the original ownership would again vest in the parties as tenants in common when the youngest child reached its majority.

In Bynum v. Bynum, 184 Okl. 36, 84 P.2d 424, the right of the court to modify an order at any time to provide for the guardianship, custody, support and maintenance of minor children is clearly announced.

■ In Sango v. Sango, 121 Okl. 283, 249 P. 925, 926, the court said:

"Under the provisions of section 507, Compiled Oklahoma Statutes 1921, the court retains the right at any time, upon its own motion or the suggestion of any one interested, to make such reasonable order as may be necessary upon either or both of the parties to a divorce action to provide for the guardianship, custody, support, and education of their

minor children, and such orders may be from time to time changed."

It is contended by Mrs. Sullins that the court erred as a matter of law in appointing a receiver for the land. This question was not expressly mentioned in her motion for a new trial. Section 1551, 12 O.S.1951, sets out six instances where receivers may be appointed by the Supreme, District or Superior Courts, or by a judge of either, or in their absence from the County the County Judge may appoint a receiver. The sixth subdivision of this statute provides:

"In all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

We think the appointment of a receiver in the case before us, where neither party had prayed for such appointment, falls within the provision last quoted. Mrs. Sullins no longer lives in Oklahoma and the income from the farm still goes to the support of the two minor children.

There is ample evidence to prove that since Mrs. Sullins had left Oklahoma the farm was being neglected. The soil was eroding and the improvements were neglected as to repairs. She had permitted the insurance policy on the improvements to lapse for non-payment of premiums. This amounted to waste.

Mr. Sullins had asked that the divorce decree be modified by giving him the custody of their son, now about 10 years of age, and asked that the management of the farm be given to him and that the income therefrom be equally divided between him and Mrs. Sullins, each having the custody of one child.

On the question of the authority of the court to appoint a receiver when neither party had asked for a receiver, we find that 75 C.J.S., Receivers, § 34, page 696, states:

"The court or chancellor may on its or his own motion appoint a receiver where the case authorizes or requires such action; but such action will constitute error if a proper case is not made for the appointment; and, where a judicial sequestration is necessary, and the law has provided an officer to take care of the property seized, the court cannot of its own accord, and without the consent of the parties, appoint another as receiver."

Among the cases cited in support of the above rule is the case of Venza v. Venza, 94 Cal.App.2d 878, 211 P.2d 913, 916, where there is a full discussion of this question. California has a statute similar to that of Oklahoma relative to the appointment of receivers. In Venza v. Venza, supra, neither party had asked for the appointment of a receiver, but Mrs. Venza had prayed for an injunction. In the body of the opinion it is said:

"It is admitted by counsel for appellants that the appointment of a receiver is discretionary. It has been so determined by the Supreme Court which said, in Goes v. Perry, 18 Cal.2d 373, 381, 115 P.2d 441, 445; 'The rule is well established that the appointment of a receiver rests largely in the discretion of the trial court, and that its action in appointing a receiver will not be disturbed by an appellate court in the absence of a showing of abuse of discretion. (Numerous citations.)' Also see Armbrust v. Armbrust, 75 Cal.App. 2d 272, 275–276, 171 P.2d 75. And that such order may be made without notice and without any previous request by either party has also been decided. * * *"

It was also stated in the body of the opinion:

"That case was cited with approval in McGarrah v. Bank of Southwestern Georgia, 117 Ga. 556, 43 S.E. 987, 989, in which it was said: 'We can perceive no reason why the chancellor should not, on his own motion, appoint a receiver whenever a proper case is made, even though neither party to the controversy asks for or desires his appointment. Such seems to be the general practice of courts of chancery both in England and America. (Cases cited.)' "

Again in Section 89, 45 Am.Jur., Receivers, it is said:

"A proper court may on its own motion appoint a receiver whenever a

proper case is made, even though neither party to the controversy asks for or desires his appointment."

In Stovall v. Edwards, 194 Okl. 335, 151 P.2d 385, 386, the general rule is stated by this Court as follows:

"Our statute, 12 O.S.1941 § 1551, provides five specific grounds for the appointment of a receiver, and then in the sixth subdivision it contains a general provision that a receiver may be appointed 'in all other cases where receivers have heretofore been appointed by the usages of the courts of equity'. The plaintiff relies upon this provision. One of the grounds for appointing a receiver under the uses of the courts of equity is to prevent waste. * * * And waste may result from acts of omission as well as from acts of commission. * * *"

The same general rule is stated in Wilson v. Wonderly, 139 Okl. 232, 281 P. 957, as follows:

"As a general rule, a receiver should not be appointed without notice to the parties affected thereby; but where, by verified petition, it is shown an emergency exists to protect a party against the loss of property by destruction thereof in the hands of others, a receiver may be appointed without notice."

We can conceive of no more proper case for the appointment of a receiver than the facts here present. We think the court was warranted in the appointment to prevent waste and insure an income for the support of the minor children. We think the trial court acted wisely in appointing a disinterested party to manage the farm because such action will doubtless allay some of the bitter feeling between the father and mother of the minors involved. It cannot be properly contended that there has been no change in conditions existing at the time the divorce decree was granted. The modification order is not retrospective.

■■ We think the court took into consideration the best interest of the children in giving the custody of a 10 year old son to the father, when the evidence clearly showed and the court found that the mother had violated the order of the court to allow the father to visit the children at reasonable times. The trial court heard all of the testimony and was in the best position to judge the qualification of the parties who were to supervise the development of these children. Such orders are always subject to modification should the best interest of the children demand.

The order of the trial court is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON and BLACKBIRD, JJ., concur.

WELCH, J., dissents.

WELCH, Justice (dissenting).

I think the trial court erred, and in law exceeded its authority, in entering the receivership order which apparently has the effect of sequestering or impounding the farm of the parties in receivership for the next eleven years of the continuing minority of the ten year old son of the parties.

The majority opinion affirms that portion of the trial court's judgment upon cited authorities which I do not think are in point. Those authorities do justify the appointment of a temporary receiver; or a receiver pending trial and determination of a controversy; or to preserve property in status quo pending trial; or to prevent threatened destruction of property pending determination of suit; or pending foreclosure of chattel mortgage; or in the collection of a fixed money judgment between parties to the suit when execution collection could not be made. However, as I construe them, neither of the decisions cited nor the statute, supports a receivership of the permanent character after judgment such as we have here. I therefore respectfully dissent.