[Civ. No. 7641.   Third Dist.   Dec. 1, 1949.]

MADELINE P. VENZA, Respondent, v. JOSEPH J. VENZA et al., Appellants.

Preston, Braucht & George for Appellants.

C. Ray Robinson for Respondent.

ADAMS, P. J.—The complaint in this action alleged that plaintiff, Madeline P. Venza and defendant Joseph J. Venza lived together from April 17, 1941, to March 5, 1945, under an agreement to pool their resources and efforts, and to share equally in their joint accumulations; that they accumulated property known as the Cannery which when acquired was of little value; that after its acquisition plaintiff devoted all her time working toward the development of same into a successful business, and through the joint efforts of the parties same rapidly increased in value until, on March 27, 1947, it, with its assets and equipment, was worth $200,000; that on March 5, 1945, the parties were married, but on March 24, 1947, they entered into a property settlement, and on March 28, 1947, plaintiff was granted an interlocutory decree of divorce from defendant, the settlement agreement being adopted by the trial court and made a part of the said decree; that prior to said decree defendant had told her that she had no further interest in the cannery, all of her interests therein having been merged with his; that relying upon the statements of defendant she was induced to enter into the property settlement; that defendant had concealed from plaintiff the amounts of income received from their joint efforts and the value of their assets, and that because of the fraudulent concealment by defendant she had been deprived of great sums of money; that defendant was still in possession of and operating the cannery and its equipment, and had in his possession large sums of money, accounts receivable, etc., which properly belong to the community estate of plaintiff and defendant. An accounting by defendant was prayed, and an equitable division of the community assets.

After the filing of the complaint, an affidavit of plaintiff's attorney was filed in which it was averred that defendants had in their possession various products of the cannery in which plaintiff claimed a share, and that defendants would, during the current packing season, pack various agricultural products, and that they were negotiating for the sale of such assets and would sell them unless enjoined.

On October 2, 1948, an order to show cause and temporary restraining order were issued by the court. Defendants, on October 6th, filed a notice of motion for dissolution of the restraining order, or for the furnishing by plaintiff of an undertaking in the sum of $500,000 as a condition of its continuance.

Hearing on said motion was had on October 7, 1948 during which Mr. Venza testified, after which, in the presence of counsel for all parties, the following colloquy was had.

"THE COURT: What would be the objection to having a receiver appointed and keep the business rolling just as it now is?"

Mr. Hawkins, the attorney for Mrs. Venza, agreed, stating that since it was contended by plaintiff that she had been defrauded out of her proportion of the community property, that defendant Venza had concealed certain assets, and that she had joined in a property settlement by reason of fraud, and that certain products of the cannery were all of his visible assets, it was inequitable that she should be required to put up a bond of $500,000 or any bond. The court then said: "No, but I would like to have a reply to my original question as to what would be the objection to a receiver? It would be fair to both of you certainly.

"MR. HAWKINS: We have no objection whatsoever. As a matter of fact, it is the suggestion of the plaintiff that a receiver be appointed, because to meet the technical position——

"THE COURT: How do you feel about the receiver?

"MR. GEORGE [counsel for defendants] : I am not in a position to stipulate to such a thing, your Honor, for this reason. Counsel says it is very technical and it is very technical, and I take the position that the complaint doesn't state a cause of action and I take a position diametrically opposed to counsel, that anything out there has been an accumulation of community property, there is no such testimony, and we take the position that it is not community property and we consequently are opposed to that, that it is not a proper case for a receiver; however, I might say that if what counsel and his client are interested in, is making sure that all the proceeds of any sale that may be made or borrowing of money is not dissipated and that they have something, in the event that they do get a judgment of some kind, that they have some place to reach out and collect it, that is one thing that would not be a pure receivership. I question whether a receiver, unless it is possible to find someone that is—has cannery experience, to go right in and completely operate it.

"THE COURT: That wouldn't be my idea, it would be a receiver to take charge of all the money that came in and look after the financial structure, but let Mr. Venza manage the cannery because he is the only one that knows how to do it, and on the other hand the wife would be protected, because

if she got a judgment in the suit, as she stated, she would have to go—to come in again and it looks to me like a receiver in that sense, that he would take the funds and impound them, pay off the mortgagees that are advancing against these cans of fruit and keep the business rolling would be good sense and not too expensive. If that would meet with more or less the approval of both of you, I would like to see that done and hold the money where we could get at it until the case is tried on its merits and decided.

"MR. HAWKINS: That is the recommendation of the plaintiff, if the Court please.

"THE COURT: Well——

"MR. GEORGE: I don't want to be compelled to stipulate to that, your Honor, but off the record, if that is the order of the Court, that is the order of the Court. I think that as a practical matter that would work out all right.

"THE COURT: I make it as an order then, trying to act as a practical businessman and yet trying to protect the plaintiff in the case to the final gun. So if I can see you gentlemen outside, we will proceed to appoint a receiver, if that is agreeable to both of you."

On the following day the court made and entered an order appointing a receiver "of all of the personal and real property of every kind and character of. the defendants" upon said receiver giving bond in the sum of $50,000, after the filing of such bond the receiver to "take possession of all of the assets, files, papers, records, documents, monies, securities, choses in action, books of account and all other property, real and personal or mixed, of the said defendants, now in the State of California, and under the jurisdiction of this Court and all property in the custody and the control of said defendants, pending the final determination of this action, or until further order of this Court." The defendants were then enjoined from interfering with the possession of the receiver.

Three days later, in the presence of attorneys for all parties, hearing on the order to show cause and temporary restraining order was dropped from the calendar; and two days later, in the presence of counsel for all parties, it was ordered that upon the qualification of the receiver the restraining order entered October 2d should be dissolved on plaintiff's giving bond in the sum of $5,000 to provide that plaintiff would pay to defendants all damages sustained by reason of the appointment of the receiver in the event that it should appear that

he had been appointed wrongfully, maliciously or without sufficient cause.

On the same day defendants filed their notice of appeal from the order of October 8th appointing the receiver.

Before this court defendants now argue that it was error for the trial court to appoint a receiver to take possession of all of the assets of defendants without notice, and without any previous request by either party, and in the absence of any showing of emergency or necessity for such receiver. They concede that a receiver may be appointed ex parte without notice upon application therefor and a showing ''that without such appointment, irreparable injury will unquestionably result before the matter can be heard on notice.''

Respondent replies that the appointment of the receiver was made with the consent of plaintiff and defendants; that appellants did not ask for a continuance nor claim that they were taken by surprise; and that, though their counsel did not stipulate he did state that he thought, as a practical matter, it would work out all right; that they do not urge that any miscarriage of justice has resulted.

We are in accord with the argument of respondent. Though the order appointing the receiver is broader than the kind of order suggested in open court, nevertheless no objection thereto was made in the trial court, and counsel for appellants was present in court two days later when the temporary restraining order was dissolved. Also the record shows that at the conclusion of the hearing when the court suggested the appointment of a receiver, it stated: ''So if I can see you gentlemen outside, we will proceed to appoint a receiver, if that is agreeable to both of you.'' It may be assumed, from the fact that a receiver was appointed and the temporary restraining order was dissolved, that counsel for all parties were agreeable thereto, and that the court acted with their consent. There is no showing that defendants ever opposed in the trial court the appointment of the receiver or the scope of the order of appointment. Those objections are, apparently, made for the first time before this court, and after defendants have been granted a dissolution of the temporary restraining order. There is no showing here that defendants have suffered from the action of the trial court or that any miscarriage of justice has resulted therefrom. There is nothing to show that the receiver interfered with the orderly operation of the cannery or extended his powers further than to ''take the funds and impound them, pay off the mortgagees . . . and keep the busi-

ness rolling," as was the original suggestion of the court, which counsel for defendants thought as a practical matter would work out all right.

██ It is apparent that the trial judge was endeavoring to protect the interests of all parties, and any objections to his action should, as a matter of courtesy, if no more, have been presented in the trial court. Appellants state in their closing brief that the order "was strenuously opposed in the presence of counsel for respondent, at the time it was signed and entered." Such statement is not sustained by the record which shows no objection on appellants' part; and we think it is sufficient to support an inference that appellants, at least tacitly, agreed. The rule that questions not raised in a lower court will not be considered on appeal is applicable. (*MacKenzie* v. *Angle*, 82 Cal.App.2d 254, 263 [186 P.2d 30].)

██ It is admitted by counsel for appellants that the appointment of a receiver is discretionary. It has been so determined by the Supreme Court which said, in *Goes* v. *Perry*, 18 Cal.2d 373, 381 [115 P.2d 441]: "The rule is well established that the appointment of a receiver rests largely in the discretion of the trial court, and that its action in appointing a receiver will not be disturbed by an appellate court in the absence of a showing of abuse of discretion. [Numerous citations.]" Also, see *Armbrust* v. *Armbrust*, 75 Cal.App.2d 272, 275-276 [171 P.2d 75]. ██ And that such an order may be made without notice and without any previous request by either party has also been decided. In the early case of *Whitney* v. *Buckman*, 26 Cal. 447, 453, the court said:

"But it is insisted that the Judge erred in appointing a receiver, when the application was for an injunction, and not for a receiver. The bill of exceptions shows, that defendant excepted to the appointment of the receiver, but the ground of the exception is not stated. It is not shown that any objection was made on the ground that the notice did not specify that a receiver would be applied for. The necessary facts and parties were all before the Court. Had the defendant been surprised, and asked for further time to meet the questions as to the propriety of appointing a receiver, doubtless the Court would have given it. But it does not appear that any such desire was manifested, or that any technical objection, or exception whatever was interposed, and we must presume that there was none. The Judge, in the exercise of his discretion, with the necessary facts and parties before him, deeming the case a proper one for a receiver rather than an

injunction, made the appointment complained of, and it is manifest that the interest of the parties was subserved by the course pursued.''

That case was cited with approval in *McGarrah* v. *Bank of Southwestern Georgia,* 117 Ga. 556 [43 S.E. 987, 989], in which it was said:

''We can perceive no reason why the chancellor should not, on his own motion, appoint a receiver whenever a proper case is made, even though neither party to the controversy asks for or desires his appointment.  Such seems to be the general practice of courts of chancery both in England and America. [Cases cited.]''

Also, see *Parrish* v. *Rigell* (1936), 183 Ga. 218 [188 S.E. 15, 107 A.L.R. 1385, 1386], in which the McGarrah case is cited.

In High on Receivers (3d ed.), section 98, page 86, *Whitney* v. *Buckman* is cited; and in his 4th edition, section 83a, page 110, High says:

''Where the title to the subject-matter of the controversy is in dispute and both sides claim the right to possession, and it is conceded by all parties [as it appears here] that the property should be operated pending the determination of the litigation, it is held that the court, of its own motion, may properly appoint a receiver to take and hold possession of the property pending the litigation.''

Also, see 45 Am.Jur. § 89, p. 81, *Gray* v. *Council of Town|of Newark,* 9 Del.Ch. 171 [79 A. 735, 739], and *Crawford* v. *Crawford* (Tex.Civ.App.), 163 S.W. 115, 116, holding that a proper court may, on its own motion, without a request therefor by either party, appoint a receiver.

We find no abuse of discretion by the trial court; accordingly the order appealed from is affirmed.

Peek, P. J., and Thompson, J., concurred.